# United States Court of Appeals
# for the Federal Circuit

_____

(Reexamination No. 90/008,447)

**IN RE CONSTRUCTION EQUIPMENT COMPANY**

_____

2010-1507

_____

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

_____

Decided:  December 8, 2011

Corrected Format Version Issued:  December 15, 2011

_____

PETER E. HEUSER, Schwabe Williamson & Wyatt PC, of Portland, Oregon, argued for appellant.  With him on the brief was DEVON ZASTROW NEWMAN.

FRANCES M. LYNCH, Associate Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee.  With her on the brief was RAYMOND T. CHEN, Solicitor, and JANET A. GONGOLA, Associate Solicitor.

_____

Before NEWMAN, PROST, and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* PROST.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

PROST, *Circuit Judge.*

Construction Equipment Company ("CEC") appeals from reexamination proceedings in which the United States Patent and Trademark Office ("PTO") rejected numerous claims sought by CEC. *Ex parte Constr. Equip. Co.*, No. 2009-5265, 2009 WL 2807871 (B.P.A.I. 2009) ("*BPAI Op.*"), *reh'g denied*, 2010 WL 2157846 (B.P.A.I. May 28, 2010) ("*Reh'g Denial*"). Because we agree with the PTO's conclusion that the claims at issue were obvious over the prior art, we affirm.

I

CEC is the owner of U.S. Patent No. 5,234,564 ("'564 patent"). The '564 patent is entitled "Mobile Screen Assembly for Rubble and Debris," and is directed to a vehicle for screening rocks and plant matter (among other things) based on size from, for example, soil or dirt at a construction site.



'564 patent fig.1. Material to be sorted is placed in the hopper 30. It is carried up by transport conveyor 26 and dropped onto screen assembly 90, which sifts it. Sorted material either descends down chute 120, or is carried away by conveyors 130 or 168, according to where in the sifting process the sorted material left the main stream.

The proceedings at issue began in January 2007 when the PTO received a request for ex parte reexamination of the '564 patent.[1] The requestor sought reexamination of claims 1, 2, and 5–8, alleging that they were unpatentable. Upon finding that the request raised a substantial new question of patentability concerning those claims, the PTO began reexamination proceedings.

CEC made various amendments and added claims. This appeal concerns claims 1, 2, 5–10, 13, 14, 19, and 20, as amended. By the end of reexamination in October 2007, all these claims stood rejected by the Examiner as obvious under 35 U.S.C. § 103 in view of the various references cited in the reexamination request. CEC appealed to the Board of Patent Appeals and Interferences, which generally affirmed the Examiner's rejections. *BPAI Op.* CEC sought rehearing, which the Board denied. *Reh'g Denial.* CEC timely appealed to this court. We have jurisdiction over the Board's decisions under 28 U.S.C. § 1295(a)(4)(A).

---

[1] CEC claims that the request was initiated by a company called Powerscreen International Distribution Ltd. ("Powerscreen"). CEC had asserted the '564 patent against Powerscreen in the late 1990s and obtained an injunction against further infringement. *Constr. Equip. Co. v. Powerscreen Int'l Distrib. Ltd.*, 45 U.S.P.Q.2d 1206 (D. Or. 1997), *aff'd without op.*, 243 F.3d 559 (Fed. Cir. 2000). According to CEC, that injunction remains in effect.

II

This court reviews the Board's factual findings for substantial evidence and its legal determinations de novo. 5 U.S.C. § 706(2)(E); *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). The determination of what a reference teaches is one of fact, as is the existence of a reason for a person of ordinary skill to combine references. *Rapoport v. Dement*, 254 F.3d 1053, 1060 (Fed. Cir. 2001); *see also Gartside,* 203 F.3d at 1316.

Applying that standard here, we see error of neither fact nor law in the Board's analysis of these claims' patentability. Reviewing the record prior art, we agree with the Board that every limitation of each claim on appeal is found in one or another of the available references. We further agree one of ordinary skill in the art would have been able to combine the available references in such a way as to practice the alleged invention of each claim. And we agree that such a person would have had a reason to make such combinations, for the reasons set forth by the Board and by the Examiner.

As CEC itself admits, the basic concepts of sifting and sorting material are not new. Neither are the concepts of carrying material via conveyors, or of positioning the sorting machine on a trailer, as the '564 patent does. CEC's alleged invention consists entirely of combining known elements into a machine that, while possibly new, was nevertheless obvious and therefore unpatentable.[2]

---

[2] In its briefing and at oral argument, CEC stated its intention, should this court affirm the Board opinion, to oppose any attempt Powerscreen might make to have its injunction against practicing the '564 patent lifted by the district court. CEC suggested that because Powerscreen had a full and fair opportunity to litigate the

We find the Board's opinion supported by substantial evidence and without legal error.[3]    The opinion of the Board therefore stands affirmed.

---

'564 patent's validity, it should be estopped from seeking to avoid the injunction irrespective of that patent's fate in reexamination.  We express no opinion on whether Powerscreen might or might not be entitled to seek abrogation of the injunction.

[3]    We are unpersuaded by the dissent's contention that this court should hold the reexamination proceedings in this case unconstitutional, or barred by considerations of res judicata or issue preclusion.  This is so for three reasons.  First, the notion that the reexamination was ipso facto unlawful was neither briefed nor argued by any party, at any stage of this case.  The appellate courts of the federal judiciary have a well-established practice of declining to take up arguments not timely made by the parties.  *Singleton v. Wulff*, 428 U.S. 106, 121 (1976); *Boggs v. West*, 188 F.3d 1335, 1337–38 (Fed. Cir. 1999). "This [rule] is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues . . . ; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." *Hormel v. Helvering*, 312 U.S. 552, 556 (1941).  In this case neither CEC nor, crucially, the PTO has had an opportunity to submit evidence or argument addressing the concerns laid out in the dissent.  To upset, as the dissent proposes, the entire reexamination proceeding on the strength of arguments not previously contemplated by the parties seems to us an indiscreet application of judicial power.

Second, we disagree that either constitutional principles or the common-law doctrines of claim or issue preclusion would bar reexamination of the '564 patent. *In re Swanson*, 540 F.3d 1368 (Fed. Cir. 2008), is highly instructive.

In that case, we found no error in the PTO's holding that reexamination could be instituted on the strength of a reference that the requesting party had unsuccessfully asserted as prior art in litigation involving the same

## AFFIRMED

---

patent, even where this court had affirmed the district court's judgment of validity. *Id.* at 1379. *Swanson* included detailed discussion of the reexamination statutes and legislative history thereof. *Id.* at 1376–77. It specifically noted that the district court's judgment, which this court affirmed, was not incompatible with the Examiner's rejection of claims on reexamination. The reason was that the district court's judgment was not that the patent was valid per se, but that the accused infringer had failed to carry his burden to prove it invalid. *Id.* at 1379; *see also Stevenson v. Sears Roebuck & Co.*, 713 F.2d 705, 710 (Fed. Cir. 1983) (holding that, for this reason, issue preclusion is generally not applicable in patent validity judgments). There was therefore no contradiction between the affirmed litigation judgment and the Examiner's rejection during reexamination.

On the thin record before us, we see no reason why *Swanson* would not control this case. In both cases, the reexamination was initiated by a party that had previously failed to prove the patent invalid in litigation. We also note that, in this case, the reexamination involved numerous references, combinations, and even claims not treated by the district court. *Compare Constr. Equip. Co. v. Powerscreen Int'l Distrib. Ltd.*, No. 96-1574, slip op. (D. Or. June 11, 1998) (reviewing novelty and nonobviousness of seven claims over three references) J.A. 97 *with BPAI Op.* (affirming rejection for obviousness of twelve claims over various combinations of seven references, two of which were considered in the *Powerscreen* litigation). Thus, even if we were to depart from this court's prior holdings concerning waiver, we do not think we would take up the dissent's invitation to find the reexamination proceeding improper.

Finally, the dissent's suggestion that a finding that a patent is not invalid in one proceeding against one party would bar any other validity challenge would be a dramatic expansion of the concept of non-mutual offensive collateral estoppel. We decline to adopt a rule for patent cases that is inconsistent with all other governing law regarding collateral estoppel.

# United States Court of Appeals
# for the Federal Circuit

---

(Reexamination No. 90/008,447)

**IN RE CONSTRUCTION EQUIPMENT COMPANY**

---

2010-1507

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

NEWMAN, *Circuit Judge*, dissenting.

This reexamination appeal raises a fundamental question—is a final adjudication, after trial and decision in the district court, and appeal and final judgment in the Federal Circuit, truly final? Or is it an inconsequential detour along the administrative path to a contrary result? Although final decisions of courts of last resort are preclusive within the courts, is the administrative agency excused? Here the Patent and Trademark Office did not mention the prior adjudication of the same issue, although that issue was finally decided in the courts in 2001.[1] The PTO's reexamination decision is now before us on appeal, the same issue that we finally adjudicated eleven years ago.

---

[1] *Constr. Equip. Co. v. Powerscreen Int'l Distrib. Ltd.,* 243 F.3d 559 (Fed. Cir. 2000), *cert. denied,* 531 U.S. 1148 (2001).

Thus the curious, as well as unconstitutional, situation whereby this court's final decision has devolved into an uncertain gesture, stripped of value in commerce as well as in law. The panel majority, unperturbed, simply defers to the agency's new result as if this history does not exist. I respectfully dissent.

## THE CONSTITUTIONAL PLAN AND THE ADMINISTRATIVE STATE

The judicial power established in Article III, §1, is "an inseparable element of the constitutional system of checks and balances." *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58 (1982). My colleagues on this panel object to the intrusion of the Constitution into this appeal, Maj. Op. at 5–6 n.3, arguing that the role of judicial rulings in administrative proceedings cannot be considered because the parties did not raise it in the Patent and Trademark Office. However, the nation's fundamental law is not waivable. The Court has reiterated that "[w]hen these Article III limitations are at issue, notions of consent and waiver cannot be dispositive because the limitations serve institutional interests that the parties cannot be expected to protect." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851 (1986).

Waiver is inapplicable to "significant questions of general impact or of great public concern." *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1345 (Fed. Cir. 2001). The constitutional impact of the procedure that gives rise to this appeal cannot be deemed waived, for it affects no less than the integrity of judgments and the separation of powers. Constitutional principles are not required to be set aside merely because they were not raised in the administrative forum. *See Hormel v. Helvering*, 312

U.S. 552, 555–59 (1941) (courts of appeal have the discretion to consider issues not raised below "as justice may require").

The plan of the Constitution places the judicial power in the courts, whose judgments are not thereafter subject to revision or rejection. Neither the legislative nor the executive branch has the authority to revise judicial determinations. *See Chi. & S. Airlines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 114 (1948) ("Judgments, within the powers vested in courts by the Judiciary Article of the Constitution, may not lawfully be revised, overturned or refused faith and credit by another Department of Government."); *Gordon v. U.S.,* 69 U.S. 561, 561 (1864) (judgments of Article III courts are "final and conclusive upon the rights of the parties"). In *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995), the Court explained that:

> The record of history shows that the Framers crafted this charter of the judicial department with an expressed understanding that it gives the Federal Judiciary the power, not merely to rule on cases, but to *decide* them, subject to review only by superior courts in the Article III hierarchy—with an understanding, in short, that "a judgment conclusively resolves the case" because "a 'Judicial Power' is one to render dispositive judgments."

*Id.* at 218–19 (*quoting* Frank H. Easterbrook, *Presidential Review*, 40 Case W. Res. L. Rev. 905, 926 (1990)). The Court traced the history of judicial finality to *Hayburn's Case*, 2 U.S. (2 Dall.) 409 (1792), which "stands for the principle that Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch." *Plaut*, 514 U.S. at 218.

With the emergence of the administrative state, "Article III, §1 safeguards the role of the Judicial Branch in our tripartite system by barring congressional attempts 'to transfer jurisdiction [to non-Article III tribunals] for the purpose of emasculating' constitutional courts, and thereby preventing 'the encroachment or aggrandizement of one branch at the expense of the other.'" *Schor*, 478 U.S. at 850 (brackets in original, internal citations omitted). The application of this rule is not in dispute, nor is it disputed that administrative agencies may be authorized to perform quasi-adjudicatory functions. *Id.* The issue here arises because the judicial function has already been performed, and warrants the finality of the Judicial Power. As the court explained in *Town of Deerfield v. Federal Communications Commission*, 992 F.2d 420, 428 (2d Cir. 1993), revision by the agency of the district court's order would render the previous judgment by the district court "merely advisory" and thus in violation of the Constitution.

Nor is the previous judgment of this court, on the issue that was taken to the PTO for reexamination, "merely advisory." In enacting the reexamination statute, Congress did not purport to violate constitutional strictures governing issues that had previously been finally adjudicated. Contrary to the majority's postulate, this constitutional concern does not "upset . . . the entire reexamination proceeding," Maj. Op. at 5 n.3. The concern arises because in this case there has already been final disposition of the issue of validity in Article III courts. Respect for judicial finality, when there has been a final decision, does not "upset . . . the entire reexamination proceeding." *Id.*

RES JUDICATA AND ISSUE PRECLUSION

In addition to the principles of finality based on separation of powers, the principles of litigation repose are violated

by the reopening in an administrative agency of issues that were litigated to finality in judicial proceedings. Throughout the evolving reexamination statutes, no legislation suggested that reexamination might overtake a final judicial decision, or that the preclusive effect of such decision may be ignored. The reexamination statutes do not purport to grant to the PTO the authority to ignore final judgments. Such an adjudicatory structure would not have been contemplated by the Congress, and is improperly accepted by this court.

Waiver is inapplicable against issues of res judicata and issue preclusion, for preclusion principles serve the powerful public and private interests of finality in judicial proceedings and the avoidance of inconsistent results. *See Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 330 (9th Cir. 1995) ("Vindication of this public interest is at its zenith in the realm of issue preclusion. It is the failure to adhere closely to basic issue preclusion principles that is most likely to lead directly to the inconsistent results that tend to undermine confidence in the judicial process."); *Caldera v. Northrop Worldwide Aircraft Servs., Inc.*, 192 F.3d 962, 970–72 (Fed. Cir. 1999) (applying principles of collateral estoppel on appeal, where an administrative board had determined anew an issue already decided in state court).

In this case the rules of res judicata and issue preclusion are involved, for this reexamination was requested by Powerscreen, the defendant in the prior district court ruling, the appellant in the prior Federal Circuit appeal, and the petitioner for certiorari. Powerscreen could not have relitigated the question of obviousness in any court. *See San Remo Hotel, L.P. v. City & Cnty. of S.F.*, 545 U.S. 323, 336 n.16 (2005) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised

in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."). There is no assertion here of the "extraordinary circumstances" contemplated by Fed. R. Civ. P. 60(b), a rule that reflects the courts' inherent power to reopen their own judgments in the interest of justice. *See Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847 (1988):

> Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment "upon such terms as are just," provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5). The Rule does not particularize the factors that justify relief, but . . . it provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," while also cautioning that it should only be applied in "extraordinary circumstances."

*Id.* at 863–64 (citations omitted).

The doctrines of preclusion relate to the re-litigation of issues that have been actually litigated and decided. A party who took part in the earlier litigation cannot ordinarily be prejudiced by subsequently being bound by that decision. *See Clements,* 69 F.3d at 330 ("Where the plaintiffs have had a full and fair opportunity to actually litigate the issue and did in fact litigate it, they can not ordinarily be prejudiced by subsequently being held to the prior determination."). The interest in finality is highlighted in this case, where this court previously upheld the validity of Construction Equipment's patent, the same patent that the

panel majority today holds to be invalid on the same issue. When Powerscreen was sued by Construction Equipment for infringement, the defense included a challenge to the '564 patent's validity on the ground of obviousness. The case was tried in the United States District Court for the District of Oregon. In the district court, Powerscreen cited references that showed various components of the patented machine, and argued that it would have been obvious to select these components and put them together in one machine. In its ruling of non-obviousness, the district court discussed the cited references and explained its conclusions. For example:

> [T]he combination of the prior art as suggested by Defendants, which merely combines the loader of the Royer Trommel with the screening device of the Eriksson Patent situated in the opposite direction, would not produce a viable machine. . . . The schematic drawing of the combination offered by Defendants includes necessary deviations from the prior art but does not indicate how these alterations are obvious from the prior art or teachings. . . . Accordingly, the court finds Defendant's portrayal of the obvious combination of the Erikkson [sic] Patent and Royer Trommel does not encompass the element of depositing the coarsest material from the top screen beyond the opposite end of the machine.

*Constr. Equip. Co. v. Powerscreen Int'l Distrib. Ltd.*, Civ. No. 96-1574-AS (D. Or. June 11, 1998), *slip op.* at 17–19. The district court ruled that the '564 patent was valid, enforceable, and willfully infringed by Powerscreen, and entered final judgment.

Powerscreen appealed to the Federal Circuit, again with full briefing of the issue of obviousness. Powerscreen ar-

gued that the claims of the '564 patent are invalid under §103 based on several combinations of references. With respect to the proposed combination of the Eriksson Patent with either the Trommel 620 or the Royer Trommel prior art, Construction Equipment responded that

> Powerscreen does not attempt to show such teachings, but instead merely contends . . . that it would have been obvious "to modify existing machine designs by simply exchanging one type of screen assembly with another." . . . Without any suggestion in the prior art that the best features of Eriksson, Royer and the Trommel 620 would have been combined in the manner recited in claim 5, Powerscreen's obviousness argument must fail, as the district court so held at JA2009-2011.

Appellee Br. 44–45. The Federal Circuit affirmed the district court's judgment. *Constr. Equip. Co. v. Powerscreen Int'l Distrib. Ltd.*, 243 F.3d 559 (Fed. Cir. 2000), *cert. denied*, 531 U.S. 1148 (2001).

Seven years later Powerscreen requested reexamination on the ground of obviousness, citing the same references and additional references, placing strongest reliance on the same references that had been cited in the litigation. However, when an issue has been litigated and judgment entered in a court of last resort, "[t]he underlying rationale of the doctrine of issue preclusion is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994) (in a reexamination completed after litigation, the PTO gave preclusive effect to the district court's ruling on claim scope, although the Board stated that it did not agree with the district court). These fundamentals of judicial authority and admin-

istrative obligation are not subject to the vagaries of shifts in the burden or standard of proof in non-judicial forums, as the panel majority proposes. Although this aspect was weighed in *In re Swanson*, 540 F.3d 1368 (Fed. Cir. 2008), a lower standard of proof in an administrative agency cannot override the finality of judicial adjudication. The burden of proof assigned to administrative bodies is a matter of policy and procedure, not a change in substantive law. Administrative burdens do not override the Judicial Power of dispositive judgment.

Conservation of judicial and administrative resources also counsels against relitigation of issues that have been fully adjudicated and finally decided. Although the administrative agency boards have a "quasi-judicial" flavor, "the same principles of efficiency which justify application of the doctrine of collateral estoppel in judicial proceedings also justify its application in quasi-judicial proceedings." *Graybill v. U.S. Postal Serv.,* 782 F.2d 1567, 1571 (Fed. Cir. 1986) (holding that Maryland court decision had preclusive effect on Merit Systems Protection Board proceedings).

The public interest in finality is particularly compelling in the context of commercial investment and property rights. The adverse effect on the patent incentive, due to uncertainty as to the validity of a duly granted patent, is notorious, and permeates the hearing record of the recently enacted America Invents Act. The reexamination that is here sustained, after final judgment in the courts, contravenes the policy of the reexamination procedures that applied in this case. The panel majority apparently misperceives this concern, for the question is not whether all "non-mutual offensive collateral estoppel" must be barred, Maj. Op. at 5–6 n.3. The question here is not of non-mutuality, for this reexamination was initiated by the same party that was defendant in the district court and Federal Circuit. The

question is whether the administrative agency is bound by prior final adjudication of the same issue—a question that has been definitively answered by the Supreme Court. *See Burson v. Carmichael*, 731 F.2d 849, 854 (Fed. Cir. 1984) ("There is no support in law for repeated bites at the apple. On the contrary, the law whenever possible reaches for repose.").

Here, the question of obviousness had been finally decided, and Powerscreen is precluded from reopening the same issue in another forum. Whether viewed as res judicata or issue preclusion, reexamination on this issue is not available.

THE REEXAMINATION STATUTE

The reexamination statute, in its various evolving forms, did not and does not purport to authorize departure from the principles of judicial review and judicial finality. The statute authorizes the return of an issued patent to the administrative agency so that the patent examiners can conduct a more thorough examination than may have occurred the first time around. The purposes remain as initially conceived, to provide a less costly way of removing or restricting patents that should not have been granted or that were granted too broadly, to permit such challenge even before litigation-inducing controversy has arisen, and also to enable patentees to bring overlooked references into the examination process. *See Patent Reexamination: Hearing on S. 1679 Before the Senate Comm. on the Judiciary*, 96th Cong. 15–16 (1979) (statement of Comm'r Sidney Diamond) ("Reexamination would eliminate or simplify a significant amount of patent litigation. In some cases, the PTO would conclude as a result of reexamination that a patent should not have issued. A certain amount of litigation over validity and infringement thus would be com-

pletely avoided."); 126 Cong. Rec. 30,364 (1980) (statement of Sen. Bayh) ("Reexamination would allow patent holders and challengers to avoid the present costs and delays of patent litigation. . . . Patent reexamination will also reduce the burden on our overworked courts by drawing on the expertise of the Patent and Trademark Office."); 126 Cong. Rec. 29,901 (1980) (statement of Rep. Hollenbeck) ("As a result of the provision for reexamination, the potential conflict can be settled by the Patent Office itself in far shorter time and at far smaller expense to the challenger or to the patent holder than would be the case if the only recourse was through the court system.").

The reexamination statute seeks to replace or reduce the expense and encumbrance of litigation; but when the same issue has already been litigated and finally adjudicated, interested persons should be able to rely on the judicial decision. Throughout the legislative adjustments to reexamination, no one suggested that reexamination in the PTO could override a final judicial decision. Such an unconstitutional act would not have been contemplated by the Congress, and is improperly endorsed by this court. For the patent here at issue, the question of obviousness was litigated and decided in the district court, followed by decision on appeal to the Federal Circuit, and denial of certiorari. The PTO on reexamination can no more invalidate an adjudicated valid patent, than can the PTO validate a patent that has been adjudicated invalid. Nor does the reexamination statute purport to grant such authority.

## THE MERITS

The panel majority decides the merits of this appeal as if there had been no litigation history, as if the issue of obviousness had not previously been fully adjudicated. As in the prior appeal to the Federal Circuit, the various elements of the patented device were selected from various

references, and the question is whether it would have been obvious to combine these elements, and in this way. This time, however, my colleagues find that "one of ordinary skill in the art would have been able to combine the available references in such a way as to practice the alleged invention." Maj. Op. at 4. This is not the correct analytic criterion.

Precedent warns against hindsight combination whereby disparate elements are fitted into the template of the new device with the guidance of the patentee. My colleagues present a classical illustration of judicial hindsight to construct a machine that was not previously known, a machine that achieved commercial success because it provided previously unavailable advantages.[2] *See In re Fritch*, 972 F.2d 1260, 1266 (Fed. Cir. 1992) ("[I]t is impermissible to use the claimed invention as an instruction manual or 'template' to piece together the teachings of the prior art so that the claimed invention is rendered obvious. . . . This court has previously stated that '[o]ne cannot use hindsight reconstruction to pick and choose among isolated disclosures in the prior art to deprecate the claimed invention.'"). This prohibited analysis is nonetheless adopted by the panel majority, although unaccompanied by any "articulation of a rational underpinning" for combining the references in such a way as to achieve the machine made by the patentee. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398,

---

[2] The invention in the '564 patent channels oversized material in a novel way whereby a relatively small machine can process larger debris than its predecessors, while concurrently sifting and sorting debris. This machine is described as reducing jamming and improving performance compared with prior art machines, and because of its capacity to handle large debris, it can be made small enough to be transported to an operating site on roads using a hitch. Its commercial value attracted imitators, and litigation.

418 (2007) ("[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated rational underpinning to support the legal conclusions of obviousness.").

The Court recognized in *KSR* that "inventions in most, if not all instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." 550 U.S. at 419. *See Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1275 (Fed. Cir. 2004) ("Inventions typically are new combinations of existing principles or features."). We are offered no rationale for the combination now deemed obvious, other than the patentee's achievement. On any view of the posture in which this case reaches us, the panel majority errs in its decision.

## CONCLUSION

As a matter of constitutional plan, judicial power, legislative structure, and national innovation policy, a patent that has been held valid or invalid in court is not subject to administrative redetermination of the same issue. On these premises, reexamination in the PTO is not generally available after the issue of patentability has been litigated to a final judgment from which no appeal can be or has been taken. The procedure here accepted is in violation of fundamental principles. I respectfully dissent.