Opinion for the court filed by Circuit Judge MAYER. Dissenting opinion filed by Circuit Judge RADER.
MAYER, Circuit Judge.
Media Technologies Licensing, LLC (“Media Tech”) appeals the judgment of the United States District Court for the Central District of California granting summary judgment that U.S. Patent No. 5,803,501 (“'501 patent”) and U.S. Patent No. 6,142,532 (“'532 patent”) are invalid due to obviousness. Media Techs. Licensing LLC v. Upper Deck Co., No. 01-1198 AHS-AN, 2008 WL 6023808 (C.D.Cal. Oct. 6, 2008). We affirm.

BACKGROUND

On December 15, 1994, Adrian Gluck filed U.S. Patent Application No. 356,481 for a “Memorabilia Card.” This application matured as the '501 patent. Gluck filed a continuation of the '481 application that matured as the '532 patent. Both the '501 *1336 and '532 patents are drawn to an invention that “provide[s] an actual piece or portion of an item in combination with a photograph or the like of a famous figure having a relationship to the item.” '501 patent col.l 11.58-61; '532 patent col.l 11.59-62.
Asserted claims 1, 6, and 7 of the '501 patent are independent claims that generally cover a piece of a memorabilia item attached to a trading card near where the actual item would typically appear in an image that depicts the item’s relationship to the person shown on the card. Claim 1, for example, recites:
A memorabilia card comprising a substrate in the form of a card and having an image surface,
the image surface including a background image and a foreground image, and wherein the foregoing image is of a famous figure,
a piece of a memorabilia item being adhered to the card adjacent to where an image of the actual item normally would appear, and
the card including a certificate attesting to the authenticity of the item.
The '532 patent’s asserted claims (reexamined claims 23-29) generally require attaching a tiny piece of a particular sports memorabilia item, sports clothing, or entertainment clothing. Claim 23, for example, recites:
An article of memorabilia comprising:
a first member, and
a portion, but not the entirety, of an authentic memorabilia item used by a popular sport or entertainment personality or during a memorable event, said portion attached to said first member wherein the authentic item is a baseball bat, and said portion comprises a tiny piece of wood taken from that bat.
On November 19, 2001, Media Tech sued Upper Deck Co. for infringement. The district court granted summary judgment in favor of defendants on the basis of res judicata, which this court reversed. Media Techs. Licensing, LLC v. Upper Deck Co., 334 F.3d 1366, 1371 (Fed.Cir.2003). Defendants then filed requests for reexamination of both the '501 and '532 patents. The district court stayed the case pending the reexaminations. A reexamination certificate issued for the '501 patent confirming the claims in their original form. A reexamination certificate issued for the '532 patent that added new claims 16-29.
On October 6, 2008, the district court issued a claim construction order, granted Media Tech’s motion for summary judgment on the defense of anticipation, and granted defendants’ motion for summary judgment that the patents were obvious. Media Tech timely appeals; defendants do not cross-appeal their adverse rulings. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

Summary judgment is appropriate if “there is no genuine issue as to any material fact and ... the movant is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A district court’s grant of summary judgment is reviewed without deference, reapplying the same standard as the district court. Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119, 1121 (Fed.Cir.2003). “In deciding whether summary judgment was appropriate, we view the evidence in a light most favorable to the party opposing the motion with doubts resolved in favor of the opponent----” Ethicon Endo-Surgery, *1337 Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed.Cir.1998). Whether an invention would have been obvious at the time the invention was made is a question of law, which we review de novo, based on underlying factual determinations, which we review for clear error, Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd., 492 F.3d 1350, 1355 (Fed.Cir.2007), unless, as is the case here, no material facts are in dispute.
A patent may not be obtained “if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.” 35 U.S.C. § 103(a). An obviousness analysis is based on several factual inquiries. A court must examine the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent art. KSR Int’l Co. v. Teleflex Inc., 550 U.S. 398, 406-07, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007) (citing Graham v. John Deere Co., 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)). At that point, a court may consider secondary objective evidence of nonobviousness, such as commercial success, long felt but unsolved need, failure of others, and the like. Id.
The prior art here includes: (a) a trading card with a picture of Marilyn Monroe and a diamond attached to the card (“Monroe”); (b) a piece of a sheet purportedly slept on by one of the Beatles attached to a copy of a letter on Whittier Hotel stationery declaring authenticity (“Whittier”); (c) a piece of fabric purportedly belonging to a Capuchin Friar named Stephen Eckert attached to paper stock including a picture of the friar (“Eckert”); and (d) a greeting card fashioned to look like a novelty item that ostensibly includes a piece of jeans material belonging to James Dean (“Dean”).
After determining the scope and content of the prior art, the differences between the prior art and the claims at issue must be determined. Media Tech argues that Monroe differs from claim 1 of the '501 patent because Monroe’s diamond is neither “a memorabilia item” nor “a piece,” as recited by the claim. Based on the construction of “memorabilia,” “an object valued for its connection with historical events, culture or entertainment,” Monroe’s diamond is memorabilia. As for the “complete” vs. “piece” distinction, even if Monroe’s diamond is not a “piece,” Whittier, Eckert, and Dean teach using “a piece” of memorabilia.
Media Tech maintains that claim 6 of the '501 patent differs from Whittier because Whittier does not teach “a card.” Monroe, however, is a card. It also asserts that Dean differs from claim 24 of the '532 patent because it does not teach using memorabilia. Dean does teach using memorabilia. It may fail to teach “authentic memorabilia,” but “authentic[ity]” is taught by Whittier and Eckert. Claims 23 and 25 through 29 of the '532 patent would have been obvious for the same reasons presented for claim 24 because they differ only in their recitation of a specific type of memorabilia piece (e.g., baseball bat, baseball, etc.).
Finally, because no reference teaches a “sports trading card,” the obviousness of claim 7 of the '501 patent depends on whether a person of ordinary skill would apply the teachings of Whittier, Eckert, and Dean to a “sports trading *1338 card.” Accordingly, we consider the level of ordinary skill in the art. Defendants submitted testimony that a trading card designer of ordinary skill routinely used the concepts found in other card industries for trading cards. Defendants’ expert was employed at Donruss Trading Card Company as a director from approximately 1991 to 1996. In his declaration, he states that the four references could well have been sought, considered, and acted on by a person of ordinary skill in the art to develop “crossover applications” for trading cards.
Media Tech asserts that a person of ordinary skill would not have combined the references — or applied them to a sports card — based on: (1) an inability to predict that a trading card would convey memorabilia authenticity; and (2) the trading card field containing an infinite number of identified and unpredictable solutions.
The “inability to predict” argument alleges that “combin[ing] ... trading cards with a piece of a memorabilia item ... resulted in] ... consumers automatically accepting] as authentic a piece of otherwise unidentifiable material.” However, as Media Tech itself acknowledges, consumer acceptance comes from the credibility already associated with the 90-year old trading card industry. As such, Media Tech has not shown that the combination of memorabilia with a conventional trading card resulted, or would result, in consumers accepting authenticity.
Regarding the infinite number of identified and unpredictable solutions, the presentation and content characteristics of trading cards are not infinite. These characteristics are limited by the cards’ physical characteristics. Moreover, while presentation involves varying parameters (color, typefaces, layout, etc.) to produce distinctive products, the asserted claims are unrelated to presentation. Instead, they relate to content. Content solutions are significantly limited by the theme and physical confines of the card, and the finite number of available solutions were predictable. Defendants need only show that it would have been obvious to one skilled in the art to attach a sports-related item instead of those items attached in the pri- or art references. Defendants have met this burden, and Media Tech’s assertion that a person of ordinary skill would not have combined the references — or applied them to a sports card — must fail.
Secondary objective evidence also fails to establish non-obviousness. Media Tech argues long felt but unsolved need and failure of others; initial skepticism; commercial success; unexpected results; and industry recognition.
Media Tech’s “long felt but unsolved need” of “stimulat[ing] demand” suffers two deficiencies. First, the need does not correspond to the asserted claims because it is overbroad. Second, “stimulating] demand” is applied too narrowly to trading card inserts. Media Tech defines success narrowly because it admits that some non-memorabilia trading-card inserts have generated interest, and are still being used. Inserts that are still in use because they generate interest are successful — and do not demonstrate failure of others. However, based on its narrow definition of success, Media Tech claims that successful inserts show failure of others because they did not “successfully stimulate[] demand in a manner similar to memorabilia cards.” Media Tech cannot have it both ways with: (1) an overbroad “long felt but unsolved need” of “stimulating] demand”; and (2) an exceedingly narrow definition of success that requires a trading card insert to raise *1339 demand to levels achieved by the alleged-infringing products. We reject both Media Tech’s overbroad “long felt but unsolved need,” and its overly narrow definition of success.
With respect to “skepticism,” Media Tech’s expert states that “[njumerous articles and commentators, including myself, originally predicted that memorabilia cards would be a short lived phenomenon and many trading card companies such as Fleer and Topps were skeptical of the concept and reluctant to introduce memorabilia cards.” But this is not supported by the record. Media Tech also relies on outrage at the idea of “destroying valuable sports memorabilia.” Alleged outrage over destroying sports memorabilia, however, does not demonstrate a belief that the trading-card beneficiary of that destruction would fail.
Regarding commercial success, Media Tech has established that the alleged infringing memorabilia cards sold by appellees are commercially successful; however, it has not established the required nexus between the claimed invention and commercial success. Ormco Corp. v. Align Tech., Inc., 463 F.3d 1299, 1312 (Fed.Cir. 2006) (“if the commercial success is due to an unclaimed feature of the device, the commercial success is irrelevant”). It attempts to rely on the “presum[ptionj that the commercial success is due to the patented invention.” Id. To do so it must show “that the successful product is the invention disclosed and claimed in the patent.” Id. (quoting J.T. Eaton & Co. v. Atl. Paste & Glue Co., 106 F.3d 1563, 1571 (Fed.Cir.1997)). Defendants present innovative manufacturing (a 3-ply, flat card with the material piece sandwiched between layers of cardstock) and packaging as factors that are unrelated to the quality of the patented subject and essential to commercial success because they convey authenticity and prevent consumers from detecting the memorabilia card within a package of trading cards. Media Tech offers no response to these factors, and consequently cannot benefit from the nexus presumption. See id. at 1312. In short, from all that appears, whatever success was enjoyed came from celebrity, not invention. Even if Media Tech could establish the required nexus, a highly successful product alone would not overcome the strong showing of obviousness.
In arguing unexpected results, Media Tech returns to its argument that a person of ordinary skill would not have predicted commercial success. This is an attempt to recycle its commercial success arguments by making similar arguments under the “unexpected results” heading. Commercial success, however, even if unexpected, is not part of the “unexpected results” inquiry. An unexpected result must arise from combining prior art elements; commercial success is a separate inquiry from unexpected results, and in any event has not been shown here to be a result of the invention as opposed to other factors.

CONCLUSION

Accordingly, the judgment of the United States District Court for the Central District of California is affirmed.

AFFIRMED