# United States Court of Appeals for the Federal Circuit

---

**TOKAI CORP., SCRIPTO-TOKAI, INC., AND CALICO BRANDS, INC.,**
*Plaintiffs/Counterclaim Defendants- Appellants,*

v.

**EASTON ENTERPRISES, INC., A CALIFORNIA CORPORATION**
**(DOING BUSINESS AS EASTON SALES) AND FLI, INC.,**
*Defendants-Cross Appellants,*

AND

**FUN LINE INDUSTRIES, INC. AND
EASTON ENTERPRISES, INC., A NEVADA CORPORATION,**
*Counterclaimants-Appellees.*

---

2010-1057, -1116

---

Appeals from the United States District Court for the Central District of California in Case No. 07-CV-0883, Judge Virginia A. Phillips.

---

Decided: January 31, 2011

---

R. JOSEPH TROJAN, Trojan Law Offices, of Beverly Hills, California, argued for plaintiffs/counterclaim defendants-appellants. Of counsel was DYLAN C. DANG.

KONRAD L. TROPE, Chan Law Group LLP, of Los Angeles, California, argued for defendants-cross appellants and counterclaimants-appellees. On the brief were THOMAS T. CHAN and REX HWANG.

---

Before NEWMAN, LOURIE, and BRYSON, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* LOURIE.
Dissenting opinion filed by *Circuit Judge* NEWMAN.

LOURIE, *Circuit Judge*.

Tokai Corp., Scripto-Tokai, Inc., and Calico Brands, Inc., (collectively, "Tokai") appeal from the decision of the United States District Court for the Central District of California granting a motion for summary judgment of invalidity for obviousness of U.S. Patents 5,697,775 (the "'775 patent"); 5,897,308 (the "'308 patent"); and 6,093,017 (the "'017 patent"). *Tokai Corp. v. Easton Enters. Inc.*, No. 5:07-cv-00883 (C.D. Cal. Oct. 27, 2009) ("*SJ Order*"). Easton Enterprises, Inc. (d.b.a. Easton Sales) and Fun Line Industries, Inc. (collectively, "Easton") cross-appeal from the court's claim construction order, *Tokai Corp. v. Easton Enters. Inc.*, No. EDCV 07-883-VAP, 2009 WL 1582924 (C.D. Cal. June 2, 2009), and the court's order granting Tokai's motion to strike Easton's supplemental invalidity contentions, *Tokai Corp. v. Easton Enters. Inc.*, EDCV 07-00883-VAP, 2009 WL 2047845 (C.D. Cal. July 8, 2009). Because the district court correctly granted summary judgment of invalidity, we affirm. As a result, we need not decide Easton's cross-appeal.

BACKGROUND

Tokai owns the asserted patents, which relate to safety utility lighters having extended lighting rods (useful for lighting barbecue grills, for example). The asserted patents share a priority date of August 15, 1995.[1] The claims of the asserted patents are directed to utility lighters with automatic child-safety mechanisms for preventing accidental ignition. Tokai competes with Easton in the market for safety utility lighters. Tokai asserts that it has sold more than 100 million safety utility lighters in the United States under one or more of its asserted patents. *SJ Order*, slip op. at 37. Tokai also contends that Easton has sold more than nine million such lighters.

In July 2007, Tokai sued Easton in the District Court for the Central District of California for infringing the asserted patents. Easton counterclaimed for invalidity. At issue are claim 1 of the '775 patent; claims 1, 10, and 13 of the '308 patent; and claims 1, 3, and 4 of the '017 patent.

The parties agree that the asserted claims substantially overlap. Each of the asserted independent claims describes a "lighting rod" (*i.e.*, a utility lighter) having a particular "safety device." The differences among the asserted claims arise primarily in the safety-device portion of the claim. Claim 1 of the '775 patent exemplifies the asserted claims:

1. A *safety device* in a lighting rod, which lighting rod is provided with a rod-like top end

---

[1] The '775 patent was filed on August 15, 1995. The '308 patent is a continuation-in-part of the '775 application. The '017 patent is a continuation-in-part of a division of the '308 patent.

portion and a main body, the rod-like top end portion being provided with a jetting nozzle for jetting out a gas, the main body being provided with:

i) a gas tank,

ii) a valve mechanism for opening and closing a path, through which the gas is supplied from the gas tank to the jetting nozzle,

iii) a piezo-electric unit for generating a discharge voltage for lighting the gas, and

iv) an *operation member*, which is capable of sliding, which has an operating section, and which drives the valve mechanism and the piezo-electric unit in order to carry out a lighting operation, the operating section of the operating member being exposed to the exterior of the main body,

the safety device comprising:

a) a *locking member* having an engagement section, which interferes with a portion of the operation member and thereby locks the lighting operation of the operation member, said locking member being capable of moving in a direction, that intersects with the direction along which the operation member moves, and

b) an *urging member*, which urges said locking member to a locking direction,

said locking member being movable to a lock releasing position against the urging force of said urging member,

wherein, with the locking member in the lock releasing position, the lighting operation is carried out by operating the operating section of

the operation member, and said locking member automatically returns to the state of the locking as the operation member returns to its original position.

'775 patent col.24 l.59–col.25 l.28 (emphases added). As illustrated by the relevant portions of figures 8A and 8B of the '775 patent, the claimed utility lighter has a trigger ("operation member" 120) and a safety device, which comprises a "locking member" (125) and a spring ("urging member" 26). To operate the lighter, the user depresses the locking member against the force of the spring and pulls the trigger. When the user releases the locking member, the spring automatically returns the locking member to its initial position, where the trigger is blocked from inadvertent actuation.



In June 2009, the district court issued a claim construction order, after which Easton stipulated that its accused utility lighters infringe all but one of the asserted claims as construed by the court.[2] *SJ Order*, slip op. at 3.

In September 2009, Tokai moved for summary judgment on Easton's counterclaim of invalidity for obviousness, and Easton filed a cross-motion for summary judgment for obviousness of the asserted patents over four prior art references. In opposition to Easton's motion, Tokai submitted expert declarations from Dr. Jones (the "Jones declaration") and Mr. Sung (the "Sung declaration"). Easton objected to the declarations, and the district court sustained Easton's objection. *SJ Order*, slip op. at 6–7. The district court noted that Tokai failed to submit written reports from Jones and Sung during expert discovery and that, as a result, Easton was denied an opportunity to depose these witnesses on the subject matter of their expert declarations. The court thus declined to consider either declaration in resolving the parties' summary judgment motions.

On the issue of invalidity, the district court determined that there existed no genuine issue of material fact as to the obviousness of the asserted claims over the four prior art references asserted by Easton: U.S. Patents 5,326,256 ("Shike"); 5,199,865 ("Liang"); 5,090,893 ("Floriot"); and 4,832,596 ("Morris"). In doing so, the court applied the four-factor analysis for obviousness under 35 U.S.C. § 103, as set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966). First, the court found no genuine issue of material fact regarding the scope and content of the asserted prior art references. *SJ Order*, slip op. at 18–22. Secondly, the court found no material dispute

---

[2]    Easton did not stipulate to infringement of claim 4 of the '017 patent.

regarding the differences between the prior art and the claimed invention. *Id.* at 23–33. The court found that, with the exception of a single aspect of claims 10 and 13 of the '308 patent (discussed further *infra*), each element of the asserted claims was disclosed in the asserted prior art. *Id.* at 23. Third, with regard to the level of skill in the art, the district court noted that the parties disagreed sharply. The court determined, however, that the dispute was immaterial, as the court's conclusion on obviousness was the same under either party's asserted level of skill. *Id.* at 36. Finally, the court evaluated Tokai's alleged objective indicia of nonobviousness. Tokai asserted that its commercial success supported patentability, but the court found no nexus between the sales data and the merits of the invention beyond what was available in the prior art. *Id.* at 38–39. The court also found unpersuasive Tokai's asserted evidence that Easton copied the claimed inventions. *Id.* at 40. Based on its analysis of the *Graham* factors, the district court concluded that the asserted claims would have been obvious to one of ordinary skill in the art as of the priority date of the asserted patents and entered final judgment on October 23, 2009.

Tokai timely appealed from the district court's exclusion of its expert declarations and from the district court's grant of summary judgment of invalidity of the asserted claims. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

A. The District Court Did Not Abuse Its Discretion by Excluding the Expert Evidence

We review a district court's decision to exclude evidence under the law of the regional circuit. *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1379 (Fed. Cir. 2010). The Ninth Circuit, the pertinent

regional circuit in this case, reviews a district court's decision to exclude evidence on summary judgment for abuse of discretion. *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005).

Tokai argues that the district court abused its discretion by excluding the Jones and Sung declarations. With regard to the Sung declaration, Tokai argues that the court failed to find that Sung was exempt from the written report requirement of Federal Rule of Civil Procedure 26(a)(2)(B). Specifically, Tokai asserts on appeal that Rule 26(a)(2)(B) permits Sung, as an employee of Tokai, to offer an expert declaration without an accompanying written report. Tokai further argues that its failure to submit written expert reports for both Jones and Sung should be excused under Rule 37(c)(1), because Tokai was justified in not providing written reports to rebut Easton's expert testimony.

In response, Easton argues that the district court did not abuse its discretion by excluding the Jones and Sung declarations for failure to comply with the written report requirement of Rule 26(a)(2)(B). With respect to the Sung declaration, Easton argues that its exclusion was not an abuse of discretion, because there is no evidence in the record that Sung was an employee of Tokai. Easton also argues that the district court properly excluded the declarations under Rule 37(c)(1) because Tokai was not justified in failing to submit the written reports and because Easton was prejudiced by its inability to depose Jones and Sung on the subject matter of their declarations. Finally, Easton argues that the two declarations are wholly conclusory, and therefore their exclusion, even if an abuse of discretion, was harmless.

Under Rule 26(a)(2)(B), the disclosure of expert testimony must be accompanied by a written report prepared

and signed by the expert witness "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Thus, Rule 26(a)(2)(B) contemplates an employee-expert exception to the written report requirement for "individuals who are employed by a party and whose duties do not regularly involve giving expert testimony." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1214 (9th Cir. 2008).

Rule 37(c)(1) "gives teeth" to the written report requirement of Rule 26(a)(2)(B) by forbidding a party's use of improperly disclosed information at a trial, at a hearing, or on a motion, unless the party's failure to disclose is substantially justified or harmless. *Yeti By Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). In reviewing the district court's decision to exclude the declarations, we are mindful to give "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Id.* ("Courts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded.").

With respect to Rule 26(a)(2)(B), Tokai failed to introduce evidence indicating that Sung qualified for the employee-expert exception. Tokai alleges that during the summary judgment hearing it informed the district court of Sung's status as a Tokai employee. The record indicates otherwise. Tokai's counsel stated only that Sung "has personal knowledge of the[] patents-in-suit because he has dealt with them," and that he "was not obligated to provide an expert report because he was one of ordinary skill in the art." J.A. 2255–56. These statements fail to assert, let alone prove, that Sung was a Tokai employee entitled to exemption from the written report requirement of Rule 26(a)(2)(B). Moreover, even if Sung were a Tokai employee, Tokai failed to introduce evidence indicating

that his duties did not "regularly involve giving expert testimony." Rule 26(a)(2)(B). Thus, the district court did not abuse its discretion by declining to exempt Sung from the written report requirement of Rule 26(a)(2)(B).

Regarding Rule 37(c)(1), we agree with the district court that Tokai's failure to adhere to the requirements of Rule 26(a)(2)(B) was neither harmless nor substantially justified. Tokai does not argue that it lacked the time or ability to prepare and submit the required written reports. Before the close of expert discovery, Tokai acknowledged that it was "fully prepared . . . to confront the challenges to its patents presented by Easton's Preliminary Invalidity Contentions," which included all four asserted prior art references. Pl.'s Reply to Def.'s Opp. to Mot. to Strike Def.'s Supplemental Invalidity Contentions and to Exclude Prior Art References Thereto at 11, *Tokai Corp. v. Easton Enters., Inc.*, No. 5:07-cv-00883 (C.D. Cal. June 29, 2009), Doc. No. 64. Yet Tokai made a tactical decision not to submit written reports from its experts. J.A. 2255–56. Tokai contends that there was no reason to submit the written reports, because the invalidity portions of Easton's expert report were "effectively gutted" by the court's exclusion of particular prior art references on which Easton's expert relied. Appellants' Opening Br. at 22. This assertion has no merit, however, as Easton relied on its expert report at summary judgment only to establish the appropriate level of skill in the art. *SJ Order*, slip op. at 6–7.

The written report requirement of Rule 26(a)(2)(A) provided reason enough for Tokai to submit the written reports, given that Tokai proffers no justification apart from its own subjective beliefs. We have previously cautioned litigants of the "pitfalls of playing fast and loose with rules of discovery":

> Conclusory expert reports, eleventh hour disclosures, and attempts to proffer expert testimony without compliance with Rule 26 violate both the rules and principles of discovery, and the obligations lawyers have to the court. Exclusion and forfeiture are appropriate consequences to avoid repeated occurrences of such manipulation of the litigation process.

*Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1376 n.4 (Fed. Cir. 2008). In addition, Tokai's failure to submit the required written reports prejudiced Easton by preventing Easton from deposing Jones and Sung on the subject matter of their expert testimony. We thus hold that the district court did not abuse its discretion by excluding the Jones and Sung declarations.

Furthermore, even assuming the district court abused its discretion by excluding the Sung declaration, the error was harmless, as the declaration is conclusory and does not raise a genuine issue of material fact. *See, e.g.*, *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997) (affirming summary judgment of obviousness because statements of patentee's expert were conclusory and thus failed to raise a genuine issue of material fact).

B. The District Court Did Not Err by Invalidating the Asserted Claims

We review *de novo* a district court's grant of summary judgment, drawing all reasonable inferences in favor of the nonmovant. *King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1273 (Fed. Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A claimed invention is unpatentable if the differences between it and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the perti-

nent art.  35 U.S.C. § 103(a) (2006); *Graham*, 383 U.S. at 13–14.

"Summary judgment is as available in patent cases as in other areas of litigation."  *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir. 1991).  Moreover, "a district court can properly grant, as a matter of law, a motion for summary judgment on patent invalidity when the factual inquiries into obviousness present no genuine issue of material facts."  *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991); *accord Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1571 (Fed. Cir. 1984); *Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 778–79 (Fed. Cir. 1983).  Whether an invention would have been obvious at the time it was made is a question of law, which we review *de novo*, based on underlying facts, which we review for clear error. *Media Techs. Licensing, LLC v. Upper Deck Co.*, 596 F.3d 1334, 1337 (Fed. Cir. 2010), *cert. denied* 79 U.S.L.W. 3201 (Oct. 4, 2010).  When the facts underlying an obviousness determination are not in dispute, we review whether summary judgment of invalidity is correct by applying the law to the undisputed facts.  *Id.*; *Karsten Mfg. Co. v. Cleveland Golf Co.*, 242 F.3d 1376, 1384–85 (Fed. Cir. 2001).

Tokai first argues that the court failed to impose on Easton an enhanced burden to rebut the presumption of validity of the asserted claims, because some of the asserted prior art references were considered during prosecution of the asserted patents.  Tokai then asserts that genuine issues of material fact remained regarding the scope and content of the asserted prior art and the differences between the asserted claims and the prior art. Tokai further contends that the district court erroneously failed to credit Tokai's asserted evidence of nonobviousness, including commercial success and copying.  Finally,

Tokai argues that the district court's legal conclusion of obviousness was flawed, because there was no motivation to combine the asserted prior art references and, in any event, combining the prior art references to make the claimed inventions would have required substantial modification of the prior art.

In response, Easton argues that the court correctly determined that there is no requirement on the facts of this case for an enhanced burden to overcome the presumption of validity. Easton contends that there is no genuine factual dispute as to the scope and content of the prior art, and that there are no unpredictable differences between the asserted claims and the prior art. Easton further asserts that the district court correctly determined that the alleged objective indicia did not overcome the showing of obviousness. As a result, Easton argues, the court correctly granted summary judgment of obviousness on the asserted claims.

We agree with the district court that Easton did not have an enhanced burden of overcoming the statutory presumption of validity. Under 35 U.S.C. § 282, each claim of a patent shall be presumed valid; an accused infringer must prove invalidity by clear and convincing evidence. *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004). Easton is correct in noting that, although the standard of proof does not depart from that of clear and convincing evidence, a party challenging validity shoulders an enhanced burden if the invalidity argument relies on the same prior art considered during examination by the U.S. Patent and Trademark Office ("PTO"). For example, we have stated that, "'[w]hen no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency

presumed to have properly done its job.'" *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008) (quoting *Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1359 (Fed. Cir. 1984)). An added burden of deference to the PTO is not required, however, with respect to invalidity arguments based on evidence that the PTO did not consider. *Am. Hoist & Derrick Co.*, 725 F.2d at 1360. Here, as the district court found and as Tokai itself acknowledges, not all of the asserted prior art was considered by the PTO. *SJ Order*, slip op. at 12–13. For example, Floriot, a key reference forming part of Easton's challenge to the validity of each of the asserted claims, was not considered by the PTO during examination of any of the asserted patents. In addition, as noted by the district court, the PTO did not consider certain of the other asserted prior art references with respect to each of the asserted patents. *Id.* at 10–11. Accordingly, we agree with the district court that an added burden is not required here.

We turn next to the factual inquiries that form the background of any obviousness analysis under 35 U.S.C. § 103. *Graham*, 383 U.S. at 17–18. With regard to the first *Graham* factor, the scope and content of the prior art, the district court correctly found no genuine issue of material fact. The parties do not dispute that utility lighters without a safety device, as exemplified by Shike, were available as of the priority date. *SJ Order*, slip op. at 19. Regarding Liang, the parties agree that this reference discloses a utility lighter with a safety device, in which the safety device must be manually reset to the locking position after each use. *Id.* at 19–20. The parties also agree that Floriot discloses a cigarette lighter with a safety device that automatically resets after each use. Further, as the district court found, the parties do not materially dispute that the safety device in Floriot com-

prises a blocking member that prevents ignition while in the locked position, a return spring that applies constant pressure on the blocking member to return it to its locked position, and a safety mechanism that resets only after the user ignites the lighter. *Id.* at 21–22. Finally, with respect to Morris, the court correctly perceived no genuine dispute that Morris teaches a cigarette lighter with a safety device mounted on the side of the lighter; that the lighter is operated via sequential action of the user's finger and thumb, first to disengage the safety device, then to ignite the lighter; and that the safety device automatically resets to the locking position after each use. *Id.* at 22.

With regard to the second *Graham* factor, the differences between the asserted claims and the prior art, we again discern no error in the district court's analysis of the parties' contentions. Regarding each of the asserted claims, the court found no dispute that utility lighters, including utility lighters with safety devices, were known in the prior art, as Shike and Liang demonstrate. *Id.* at 23. With respect to claim 1 of the '775 patent, the court correctly found no material dispute that Floriot teaches each of the four essential components of the claimed safety device: a locking member that locks the lighter by hindering the movement of the operation member; an urging member that pushes the locking member into the locking position; the ability to operate the lighter by pushing the locking member against the urging force; and the automatic return of the locking member to the locking position after use. *Id.* at 24–27.

Regarding claim 1 of the '308 patent, we agree with the district court that this claim is "substantially identical to Claim 1 of the '775 Patent," but for the additional limitation of an "unlocking member," which moves the locking member against the urging force of the urging

member and is located opposite the operation member. *Id.* at 27. Moreover, the district court found that Easton demonstrated, and Tokai did not refute, that Morris teaches a lighter with such an unlocking member. *Id.* at 28. The district court did not err by finding no material factual dispute that Shike, Floriot, and Morris together disclose each element of claim 1 of the '308 patent.

Claim 10 of the '308 patent discloses a utility lighter comprising a safety device with a "locking element" and an "unlocking element." This claim is broader than claim 1 of the '775 patent and claim 1 of the '308 patent, in that it requires neither an urging member nor an automatic return of the locking element to the locking position. The court found no dispute that Floriot discloses a locking element and that Morris discloses an unlocking element as recited in claim 10 of the '308 patent. *Id.* at 30. As the district court correctly found, the only difference between claim 10 and the asserted prior art is the intended position of the hand while operating the lighter: in claim 10, the thumb engages the unlocking element and a finger engages the operation member; in Morris, the intended positions of the finger and thumb are reversed. *Id.* Claim 13, which depends from claim 10, adds an "urging means" limitation, which, as the court discussed in connection with claim 1 of the '775 patent and claim 1 of the '308 patent, Floriot discloses. *Id.* at 30–31.

Claim 1 of the '017 patent claims a utility lighter with a safety device comprising a "locking means," which is rotatable between a locking position and a lock-release position, and an "urging means," which urges the locking means toward the locking position. Tokai does not dispute on appeal the district court's holding that "locking means" corresponds to "[t]he combination of the locking member and the portion of the lighter case on which the locking member is mounted." *Tokai Corp.*, 2009 WL

1582924, at *7. We agree with the district court that Floriot discloses a rotatable locking means as claimed, and that Floriot further discloses an urging means, as the court discussed in connection with the '775 and '308 patents. *SJ Order*, slip op. at 31–32.

Claims 3 and 4 of the '017 patent are dependent upon claim 1. Claim 3 adds the requirement that the lighting operation can be repeated so long as the locking member is held in the lock-releasing position. The district court correctly found no dispute that Floriot is capable of such repeated lighting. *Id.* at 32. Claim 4 adds the limitation that the locking means has a "locking section," which prevents the lighting operation by engaging with the operation member while in the locking position, and which permits the lighting operation while in the lock-release position by disengaging from the operation member. The district court found, and we agree, that Floriot discloses a blocking member that meets this "locking section" limitation. *Id.* at 33.

In sum, viewing all facts and reasonable inferences in the light most favorable to Tokai, we do not discern any error in the district court's analysis of the second *Graham* factor, the differences between the prior art and the asserted claims. The district court correctly found no dispute that the asserted prior art discloses each element of claim 1 of the '775 patent, claim 1 of the '308 patent, and claims 1, 3, and 4 of the '017 patent. The court also correctly found that the only difference between the asserted prior art and claims 10 and 13 of the '308 patent is the intended position of the thumb and finger for operating the lighter.

Although at the district court the parties disputed the third *Graham* factor, the appropriate level of skill in the art, neither party on appeal contends that the court erred

by assuming, without deciding, that the level of skill in the art was "an individual showing aptitude in high school shop class, or someone who builds, takes apart, or repairs basic mechanical toys/devices." *SJ Order*, slip op. at 34. We, too, discern no error in the district court's assumption. The standard adopted by the district court was the less sophisticated of the two asserted standards. *Id.* at 36. Since the district court found that the asserted claims would have been obvious to a less sophisticated artisan, then under the facts of this case the court could not have arrived at a different conclusion by adopting the viewpoint of one with greater skill and experience. Accordingly, the parties' disagreement at the district court as to the appropriate level of skill in the art did not create a genuine issue of material fact precluding summary judgment.

With regard to the final *Graham* factor, secondary indicia of nonobviousness, the district court considered Tokai's evidence of commercial success and copying. *Id.* at 37–40. Regarding commercial success, this factor "may have relevancy" to the overall obviousness determination, *Graham*, 383 U.S. at 18, but a nexus must exist between the commercial success and the claimed invention. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311–12 (Fed. Cir. 2006) ("Evidence of commercial success . . . is only significant if there is a nexus between the claimed invention and the commercial success."). If commercial success is due to an element in the prior art, no nexus exists. *Id.* at 1312; *see also Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983) (holding claimed invention obvious where patent holder "failed to show that such commercial success . . . was due to anything disclosed in the patent in suit which was not readily available in the prior art").

Here, Tokai conceded that utility lighters, including child-safe utility lighters, were available in the prior art, *SJ Order*, slip op. at 38, and acknowledged that all utility lighters currently sold are required to have a safety device. J.A. 2045. In discussing the marketing and sales of Tokai's utility lighters, Tokai's corporate representative not once referred to the automatic locking feature of Tokai's lighters—*i.e.*, the feature that purportedly distinguishes the claimed inventions from prior art utility lighters. The district court thus held that because Tokai failed to establish a nexus between the automatic safety feature and the alleged commercial success, Tokai's sales data were not pertinent to the court's obviousness determination.

We agree with the district court with respect to the final *Graham* factor. Tokai proffered no evidence from which one could reasonably infer a nexus between its sales data and its utility lighters' automatic-locking features. *SJ Order*, slip op. at 38–39; *see also Cable Elec. Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985) (holding on summary judgment that even though commercial success could be deduced, it deserved no weight because a nexus was not established), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999) (en banc). However, even assuming the existence of a nexus, we see no error in the district court's determination that Tokai failed to establish "that any of these secondary factors are significant," *SJ Order*, slip op. at 37, in light of the strong showing of *prima facie* obviousness, as discussed *infra*. *See Media Tech. Licensing*, 596 F.3d at 1339 ("Even if [the patentee] could establish the required nexus, a highly successful product alone would not overcome the strong showing of obviousness."); *Ryko Mfg. Co.*, 950 F.2d at 719 (holding on summary judgment that the claimed inven-

tion was obvious, despite "assum[ing] that a nexus existed," because "secondary considerations did not carry sufficient weight to override a determination of obviousness based on primary considerations").

We further agree with the district court that Tokai's asserted evidence of copying, *viz.*, Easton's stipulation of infringement, is unpersuasive. *See Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1380 (Fed. Cir. 2000) (noting that "a showing of copying is only equivocal evidence of non-obviousness in the absence of more compelling objective indicia of other secondary considerations"). Copying "requires evidence of efforts to replicate a specific product." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010). A stipulation of infringement, taken alone, is not probative of copying. *See, e.g., Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004).

From the foundation established by the aforementioned factual inquiries, we must determine whether the district court legally erred by invalidating the asserted claims for obviousness. In *KSR*, the Supreme Court stated that, in situations where "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007). Such is the case here.

The district court correctly found no material factual dispute as to each of the *Graham* factors. By Tokai's own admission, the components required to assemble the claimed inventions are "simple mechanical parts that are well known in the art." Appellants' Opening Br. at 54. While that in itself does not render the claims obvious,

*KSR Int'l Co.*, 550 U.S. at 418, it is also undisputed that a need for safer utility lighters was recognized in the art as of the priority date. *E.g.*, '775 patent col.1 ll.20–25 (noting that "a need exists for a lighting rod having enhanced safety characteristics" and that, "[t]o satisfy such a need, lighting rods provided with various safety devices have been proposed" in the prior art); Appellants' Combined Reply & Response Br. at 16 ("The district court correctly noted that the [asserted patents] identify a need for child-resistant utility lighters. . . . To be sure, the problem in the art was how to make lighters more safe . . . ."). Furthermore, the parties agree that cigarette lighters and utility lighters are analogous arts. One of ordinary skill would thus be directed to the claimed safety utility lighters by combining available utility lighters with prior art automatic locking mechanisms on cigarette lighters. We have consistently stated that courts "may find a motivation to combine prior art references in the nature of the problem to be solved," and that "[t]his form of motivation to combine evidence is particularly relevant with simpler mechanical technologies." *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276 (Fed. Cir. 2004); *see also Rothman v. Target Corp.*, 556 F.3d 1310, 1319 (Fed. Cir. 2009); *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573 (Fed. Cir. 1996).

Accordingly, the undisputed facts in this case—including the state of the prior art, the simplicity and availability of the components making up the claimed invention, and an explicit need in the prior art for safer utility lighters—compel a conclusion of obviousness as to the subject matter of each of the asserted claims. *KSR Int'l Co.*, 550 U.S. at 419–20 ("One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed

by the patent's claims.").  A strong case of *prima facie* obviousness, such as that presented here, cannot be overcome by a far weaker showing of objective indicia of nonobviousness.  *See Media Tech. Licensing*, 596 F.3d at 1339; *Ryko Mfg. Co.*, 950 F.2d at 719.

Although a need in the prior art for safer utility lighters is not disputed, Tokai contends that the solutions to this problem were "not at all predictable" and required "radical modification" of the asserted prior art.  We reject these arguments.  One of ordinary skill in the art would not have viewed the subject matter of the asserted claims as unpredictable.  As the Supreme Court recognized in *KSR*, the nature of the mechanical arts is such that "identified, predictable solutions" to known problems may be within the technical grasp of a skilled artisan.  550 U.S. at 421; *see also Rothman*, 556 F.3d at 1319 (stating that, in the predictable arts, a claimed invention may be invalidated more readily by showing "a motivation to combine known elements to yield a predictable result").  Moreover, it is undisputed that cigarette lighters and utility lighters are analogous arts and that a need for enhanced safety devices had been met in the field of cigarette lighters, as demonstrated by Floriot and Morris.  It would have been obvious to one of ordinary skill and creativity to adapt the safety mechanisms of the prior art cigarette lighters, as disclosed in Floriot and/or Morris, to fit a utility lighter as disclosed by Shike, even if it required some variation in the selection or arrangement of particular components.  *KSR Int'l Co.*, 550 U.S. at 417 ("When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one.").

In light of the foregoing, we hold that the asserted claims are invalid as obvious.  Specifically, with regard to claim 1 of the '775 patent, the court did not err by holding

on summary judgment that the claimed subject matter as a whole would have been obvious over Shike and Floriot. Each of the components making up the claimed subject matter existed in the prior art, including the utility lighter, the locking member, the urging member, the ability to move the locking member in a direction opposite the urging force, and the automatic return of the locking member to the locking position following ignition. There was a recognized need in the prior art for safer utility lighters that would have provided one of ordinary skill with a definite reason for modifying the prior art utility lighters exemplified by Shike and Liang. One of ordinary skill would thus have been motivated to adapt these utility lighters to incorporate the automatic safety devices available in the art, as exemplified by Floriot and Morris.

Similarly, the court did not err by holding that the subject matter of claims 1, 10, and 13 of the '308 patent would have been obvious over Shike, Floriot, and Morris. The '308 patent addresses the same problem as the '775 patent. '308 patent col.1 ll.23–29. In addition to the elements of claim 1 of the '775 patent, an unlocking member is required by claim 1 of the '308 patent. Morris indisputably discloses this element, and Morris, like Shike and Floriot, is analogous art available to the skilled artisan. It therefore would have been obvious for one of ordinary skill to combine the required elements from the asserted prior art to arrive at the subject matter of claim 1 of the '308 patent. The required elements of claim 10 of the '308 patent include a utility lighter, an example of which is disclosed by Shike; a locking element, an example of which is disclosed by Floriot; and an unlocking element, an example of which is disclosed by Morris. The only missing claim limitation—the intended position of the finger and thumb when using the lighter—is nothing more than a predictable variation on the prior art. *KSR*

*Int'l Co.*, 550 U.S. at 417. In both the claimed invention and in Morris, the lighter is operated via sequential action of the finger and thumb; a mere reversal in the order of these actions does not confer patentability. Claim 13 of the '308 patent, which is dependent upon claim 10, adds the requirement of an urging means, as Floriot discloses. We discern no error in the district court's conclusion that claims 1, 10, and 13 of the '308 patent are invalid as obvious.

Finally, regarding the '017 patent, the district court did not err by holding the subject matter of claims 1, 3, and 4 obvious over Shike and Floriot. As with the '775 patent, each of the elements was found in analogous prior art, including, for claim 1, a utility lighter, a locking means, and an urging means; for claim 3, the added limitation of repeatability of the lighting operation; and for claim 4, the added limitation of a locking section that operates in the specified manner. One of ordinary skill would have had the motivation and capability of adapting and assembling these prior art components into the subject matter of the asserted claims.

CONCLUSION

For the foregoing reasons, the district court did not abuse its discretion by excluding the expert reports and did not legally err by determining that the asserted claims are invalid.

**AFFIRMED**

COSTS

Costs to Easton.

# United States Court of Appeals
# for the Federal Circuit

---

**TOKAI CORP., SCRIPTO-TOKAI, INC., AND CALICO BRANDS, INC.,**
*Plaintiffs/Counterclaim Defendants-Appellants,*

**v.**

**EASTON ENTERPRISES, INC., A CALIFORNIA CORPORATION (DOING BUSINESS AS EASTON SALES) AND FLI, INC.,**
*Defendants-Cross Appellants,*

**and**

**FUN LINE INDUSTRIES, INC. AND EASTON ENTERPRISES, INC., A NEVADA CORPORATION.**
*Counterclaimants-Appellees.*

---

2010-1057,-1116

---

Appeal from the United States District Court for the Central District of California in Case No. 07-CV-0883, Judge Virginia A. Phillips.

---

NEWMAN, *Circuit Judge*, dissenting.

The invention patented by Tokai Corporation is a utility rod lighter of the sort used to light barbeques or fireplaces, having a novel safety mechanism that achieves a new level of child-safety over the prior art. The Tokai lighter displaced previously available child-safety rod utility lighters, and received the ultimate accolade of copying by the competition.

The Tokai lighter has an ingenious safety design, whereby the device is simple to operate by adults but not by children, unlike prior art utility lighters, and locks automatically after use, unlike prior art utility lighters. The Tokai safety structure does not result from direct combination of the prior art. Nonetheless the district court, and now this court, hold on summary judgment that the asserted claims of the Tokai patents are invalid for obviousness. I must, respectfully, dissent.

I

The basic structure of a utility rod lighter is illustrated in a patent to Shike, cited by the district court as prior art to Tokai's claimed lighter.



**Fig. 1**

U.S. Patent 5,326,256 ("Shike"). Shike shows the typical extended rod for lighting the charcoal or other fuel, and a trigger (18) operated mechanism that causes a piezoelectric unit (20) to discharge voltage that ignites combustible gas released from a gas reservoir (7). Shike Patent, col 3. II. 5-15. Although Shike does not have a safety mechanism, utility rod lighters are currently required to have safety features to prevent accidental or uncontrolled ignition, particularly by children.

The typical safety features in utility lighters operate in three steps: first, the user releases a locking mechanism; then the lighter is used, generally by a trigger-initiated ignition mechanism; then the lighter is relocked. For example, the cited prior art patent to Liang shows a utility lighter with a safety mechanism that is manually controlled:



**Fig. 1**

U.S. Patent 5,199,865 ("Liang"). As the district court explained, Liang teaches a utility rod lighter with a control knob safety mechanism (3) that "must be manually set to a locking position or operational position, and will not automatically return to a locking position after use." *Tokai Corp. v. Easton Enters. Inc.*, No. 5:07-cv-00883 (C.D. Cal. Oct. 27, 2009) ("*SJ Order*"), slip op. at 20.

In contrast, Tokai's device provides two aspects of child-proof safety: first, the device is not operable by a child's hand, and second, it locks automatically after use. The Tokai device requires an adult hand for concurrent two-finger operation, whereby the locking member is unlocked by the adult thumb while the trigger is simultaneously operated by the adult index finger; these steps must be concurrent, not sequential. After release the mechanism automatically returns to the locked position. The simplicity, the ease of operation, the child-proof effectiveness, and the safety of this design displaced the competition. The record states that Tokai has sold more than 100 million of these utility lighters in the United States; Tokai's Vice President testified that large retailers such as Wal-Mart told him that they were purchasing Tokai's lighters because of the improved child safety "as it relates to our mechanism versus the competition."

Tokai asserted Claim 1 of the 5,697,775 (the "'775 patent"); Claims 1, 10 and 13 of the 5,897,308 (the "'308 patent"); and Claims 1, 3, and 4 of the 6,093,017 (the "'017 patent"), all inventions of Saito et al. On summary judgment the district court held all of the asserted claims invalid for obviousness. I cannot agree.

The Tokai '308 patent utility lighter safety feature is illustrated in the patent as follows:



U.S. Patent 5,897,308 ("Saito"). As shown by the arrow in Figure 8A, when the user's thumb depresses the lock-releasing button (125c) of the locking member (125), the engagement section of the locking member (125b) moves from the engagement groove (120f) into the operation member or trigger (120), and the shaft (125a) slides along the vertical groove (120e) of the operation member, so that it becomes possible for the trigger to be pulled simultaneously with depression of the lock-releasing button. *Id.* col.16 ll.18-31. After the trigger is pulled and ignition is achieved, on release of the device the spring (26) automatically returns the locking member to the locked position whereby the trigger cannot be pulled. *Id.* col.16 ll.31-33. Claim 10 is directed to the device and its thumb and finger operation:

10.  A safety device in a lighting rod, which lighting rod is provided with a rod-like top end portion and a main body, the rod-like top end portion being provided with a jetting nozzle for jetting out a gas, the main body being provided with:

    i)   a gas tank,

    ii)  a valve mechanism for opening and closing a path, through which the gas is supplied from the gas tank to the jetting nozzle,

    iii) a piezoelectric unit for generating a discharge voltage for lighting the gas, and

    iv) an operation member, which is capable of sliding, which has an operating section, and which drives the valve mechanism and the piezoelectric unit in order to carry out a lighting operation, the operating section of the operating member being exposed to the exterior of the main body in a position to be capable of operational engagement by a finger of a hand holding the lighting rod,

the safety device comprising:

    a)  a locking element which is disposed inside the main body to be movable between a locking position where it prevents motion of the operation member in a direction to produce the lighting operation and a lock release position where it allows motion of the operation member in a direction to permit the lighting operation, and

    b)  an *unlocking element* which is exposed to the exterior of the main body at a location *opposite from the operation member* so as to be *engagable by the thumb*

> *of the hand holding the lighting rod* to move the locking element from the locking position to the unlocking position *while a finger of that hand engages the operation section.*

*Id.* col.33 l.44-col.34 l.28 (emphases added). Claim 13 adds the automatic locking limitation that the unlocking element is normally urged away from the lock release position by "urging means." *Id.* col.34 ll.43-47.

The district court held all of the claims invalid for obviousness, based on the combination of the Shike utility lighter, *supra*, which has no safety feature, with the safety features of a cigarette lighter patent to Morris, and/or a cigarette lighter patent to Floriot. However, these features, if combined, do not produce the Saito device. The Morris cigarette lighter is as follows:



Fig. 1

U.S. Patent 4,832,596 ("Morris"). The Morris safety feature consists of a stop member (9) with an inturned wedge por-

tion (12) which, when in the locked position, prevents actuation of the lever (4a) which controls the opening of the lighter's gas valve. The user grasps the lighter in such a manner that the index finger presses at (16), thereby sliding the wedge portion (12) outwardly from underneath the lever (4a), and releasing the gas valve, whereby the gas is ignited by striking the flint wheel. *Id.* at col.3 ll.5-15. This patent was cited during examination, the PTO recognizing the differences in mechanism and operation from the Saito device.

The Floriot lighter also blocks the opening of a gas valve in a flint and wheel cigarette lighter, illustrated as follows:





Fig. 9

U.S. Patent 5,090,893 ("Floriot"). The Floriot lighter safety mechanism has a rocking lever (15), shown at the top of Figure 9, that controls the opening of a burner valve, and a blocking lever (24, 24a), shown at the bottom of Figure 6, that blocks the operation of the rocking lever. In operating the Floriot lighter, first the blocking lever is moved to an unblocking position by the thumb, in which position the blocking lever is held by a projection. The thumb then operates the unblocked cigarette lighter using the flint wheel. These are sequential actions, and do not require two-finger coordination. The blocking lever returns to the locked position automatically after operation of the cigarette lighter. *Id.* col.8 ll.13-30.

The district court held that it would have been obvious to a person of ordinary skill, defined for summary judgment purposes as a person with aptitude for high school shop class, to combine the various elements of the prior art to create the Saito device. However, the Saito device is not a

simple insertion of the Floriot or Morris cigarette lighter safety mechanism into a utility lighter, as in the combination of known structures exemplified in *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007). Where, as here, the features of one reference cannot be substituted into the structure of a second reference, this weighs against obviousness. *See Orthopedic Equip. Co. v. United States*, 702 F.2d 1005, 1013 (Fed. Cir. 1983) ("The fact that features of one reference cannot be substituted into the structure of a second reference may indicate that the claims were nonobvious in view of the combined teachings of the two references.").

Both Morris and Shike were cited in the '775 patent, and the specification of the '308 patent recognizes that "the aforesaid safety mechanisms for gas lighters cannot be directly applied to a lighting rod, which has a different structure." '308 Patent, col.1 l.52, col.2 ll.1-3. Floriot is cumulative to Morris, in offering a different safety mechanism for a cigarette lighter. "When an attacker simply goes over the same ground travelled by the PTO, part of the *burden* is to show that the PTO was wrong in its decision to grant the patent." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984). Defendants have not met this burden.

The district court applied an incorrect standard. The determination of obviousness is not whether a person could, with full knowledge of the patented device, reproduce it from prior art or known principles. The question is whether it would have been obvious, without knowledge of the patentee's achievement, to produce the same thing that the patentee produced. This judgment must be made without the benefit of hindsight. It is improper to take concepts from other devices and change them in light of the now-

known template of the patented device, without some direction in the prior art that would render it obvious to do so.

In a crowded and competitive field such as this is stated to be, a modification that achieves a valuable improvement is of significance in view of the many entrants seeking commercial advantage. *See In re Hummer*, 241 F.2d 742, 744 (C.C.P.A. 1957) ("applicant seeks a patent on only a narrow improvement. Progress is as important, however, in crowded arts as well as in those which are in the pioneer stage"). As the *Hummer* court recognized, incremental but unobvious improvements serve the public interest, and are included in the purpose of the patent incentive.

The obviousness determination often presents a close question, as recognized by Judge Learned Hand: "Courts never tire, or at least in earlier times they never did, of expatiating upon the freshness of insight which observes a little, but fruitful, change which had theretofore escaped detection by those engaged in the field." *Harries v. Air King Products Co.*, 183 F.2d 158, 162 (2d Cir. 1950). Precedent guides the decision-maker to take cognizance of the response of the marketplace to the invention. *See Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997) ("The so-called 'secondary considerations' provide evidence of how the patented device is viewed by the interested public: not the inventor, but persons concerned with the product in the objective arena of the marketplace. . . . Such aspects may be highly probative of the issue of nonobviousness.") (citing *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983)). The Court reiterated in *KSR* that "[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." 550 U.S. at 406 (quoting *Graham v. John Deere Co.*

*of Kansas City*, 383 U.S. 1, 17-18 (1966)); *see also Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 306 (Fed. Cir. 1985) ("Secondary considerations may be the most pertinent, probative, and revealing evidence available to the decision maker in reaching a conclusion on the obviousness/nonobviousness issue.").

Although the district court recognized the commercial success of the Saito utility lighter, the court declined to give it any weight, finding, on summary judgment, that there was no "nexus" between the Saito invention and its commercial success. *SJ Order*, slip op. at 38. The court erred in law, for "a prima facie case of nexus is generally made out when the patentee shows both that there is commercial success, and that the thing (product or method) that is commercially successful is the invention disclosed and claimed in the patent." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). The defendants did not dispute Tokai's evidence that its commercial success was due to its improved child-safety mechanism. It was improper for the district court to ignore the principle stated in *Demaco* and then resolve this material factual aspect against Tokai on summary judgment. *See Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1574 (Fed. Cir. 1996) (vacating summary judgment of invalidity for obviousness, on the ground that a genuine issue of material fact existed as to whether a commercial success nexus was present).

The district court found that "copying is inarguably present here," but stated that it gave no weight to this finding, reasoning that copying is "only equivocal evidence of nonobviousness." *SJ Order*, slip op. at 39-40.[1] While it is the

---

[1] Despite the district court's recognition that Tokai had demonstrated copying, my colleagues find Tokai's

province of the district court to determine the weight to be given to evidence of commercial success and copying, such evidence cannot be completely ignored. *See Stratoflex*, 713 F.2d at 1538 ("[E]vidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness. Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not.") (citations omitted); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555 (Fed. Cir. 1983) ("objective evidence of nonobviousness . . . should when present always be considered as an integral part of the analysis").

Tokai's evidence of commercial success and copying of the patented device, taken with the structural differences and the differences in operation between the prior cigarette lighter safety mechanisms and the Saito utility lighter safety mechanism, as well as the differences between the auto-locking Saito mechanism and manual locking prior utility lighters, created at least genuine issues of material fact bearing on obviousness. Summary judgment was improperly assessed by the district court, and is now incorrectly affirmed by this court. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (on

---

evidence of copying "unpersuasive," stating that copying "requires evidence of efforts to replicate a specific product." Maj. Op. at 20. Defendants' internal documentation of its unsuccessful attempts to design around the Saito invention is such evidence. J.A. 1451-1457. The court improperly resolves this factual aspect against Tokai on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (on motion for summary judgment "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor").

motion for summary judgment the court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts).

My colleagues depart from the law governing determination of obviousness.  The disputed facts cannot be adversely found on summary judgment.  The question at least requires trial.

## II

Procedural error appears to have disadvantaged the patentee.  The district court excluded from consideration on the summary judgment record the declaration of Mr. Kil Young Sung for failure to provide a written expert witness report.  Federal Rule 26(a)(2)(B) provides that expert testimony must be accompanied by a written report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." However, a party's employee who does not meet this Rule need not provide a written expert report.  Tokai states that Mr. Sung was indeed an employee exempt from the Rule 26(a)(2)(B) report requirement, and that when the issue was raised in connection with the summary judgment proceeding, Tokai was improperly barred from showing his employee status.  I must agree that this procedure was flawed.

My colleagues state that the exclusion was "harmless." Maj. Op. at 11.  When reviewing an erroneous evidentiary ruling, the Ninth Circuit, whose procedural rules govern, begins with a presumption of prejudice.  *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005) ("when reviewing the effect of erroneous evidentiary rulings, we will begin with a presumption of prejudice").  The Sung declaration describes

the specially configured elements of the Floriot cigarette lighter, explains their operation, and explains how the Floriot safety mechanism is incompatible with the prior art Shike utility lighter. Mr. Sung, as a designer of both utility lighters and cigarette lighters, offered a reasoned discussion of the prior art and its combination, relevant to the issues before the district court. The district court exceeded its discretion in denying Tokai the opportunity to establish the admissibility of this evidence under Rule 26(a).

## CONCLUSION

The district court referred to the known need for an improved safety mechanism for utility lighters, and stated that this need was a reason to modify the prior art to make Tokai's improved lighter. To the contrary, the continuing need weighs against the obviousness of this successful device.

Nor is it reasonable to trivialize an improvement by its relative simplicity. To the contrary, the fact that this improvement eluded discovery, and that its advantages were immediately apparent to the marketplace and to the competition, weigh in favor of nonobviousness. At a minimum, summary judgment of invalidity was improperly granted. My colleagues err in sustaining that judgment.